[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court for decision is an appeal of Susan Charlwood (Petitioner) from a decision of the Department of Health, Health Services Regulation, Board of Physical Therapy (Department), finding the Petitioner guilty of unprofessional conduct and issuing a reprimand as against the Petitioner's license. Jurisdiction in this Court is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
The Petitioner is a practicing physical therapist licensed in both Rhode Island and in Massachusetts. On July 7, 1999, the Petitioner began treatment of Patient A,[1] a professional firefighter who had suffered a work-related injury that caused him low back pain. Patient A received treatment from the Petitioner from July 1999 to May 2001.
On October 18, 2001, an administrative officer in the Department sent the Petitioner a notice indicating that a complaint had been filed against her as a result of her care of Patient A. The notice revealed that the Rhode Island Board of Physical Therapy had received a complaint against the Petitioner from Blue Cross/Blue Shield of Rhode Island. The Petitioner denied the allegations in a response dated October 24, 2001. A meeting with the Rhode Island Board of Examiners in Physical Therapy was held in November 28, 2001 to discuss the complaint against the Petitioner, after which the Department sent the Petitioner a proposed consent order as a potential resolution of the matter in May 2002. The Petitioner did not agree to the proposed consent order and requested a formal hearing in a letter to the Department dated May 17, 2002.
On March 28, 2003, the Department issued an Administrative Hearing Notice, setting forth examples of the Petitioner's conduct that it alleged constituted unprofessional conduct and therefore grounds for disciplinary action. The Department alleged that
 "1. Treatment [was] provided without assessment, baseline tests and measures, diagnosis, prognosis, goals and plan of care including expected outcome of treatment with time frames;
 2. [the Petitioner] [p]erformed treatment on Patient A for over a one (1) year time period without obtaining a physician's referral after ninety (90) days; and
 3. Documentation of said treatment is not consistent with the standards of practice in that it includes information pertaining to:
No re-evaluations
No reference to established goals
 No evaluation of other systems treated — cardiac, respiratory."
The Department held three hearings — June 3, 2003, July 17, 2003, and July 25, 2003 — over which a hearing officer presided. Both the State and the Petitioner presented expert testimony, and the Petitioner also testified on her own behalf.
On August 12, 2003, the Hearing Officer issued the Department's decision, concluding that the Petitioner should be issued a reprimand. On September 9, 2003, the Petitioner filed a timely appeal of the Department's decision, alleging that it is arbitrary and capricious and/or characterized by an abuse of discretion or clearly unwarranted exercise of discretion, in violation of § 42-35-15(g).
 STANDARD OF REVIEW
The Superior Court exercises its appellate jurisdiction in reviewing decision of the Department and other state administrative agencies pursuant to § 42-35-15. Section 42-35-15 provides:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In its review of an administrative agency decision under § 42-35-15, this Court acts in the manner of an appellate court with a limited scope of review. Mine Safety Appliances v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). A reviewing court gives great deference to an agency's final decision. R.I. Temps, Inc. v. Dep't of Labor Training, 749 A.2d 1121,1125 (R.I. 2000). When a trial judge reviews a decision of an agency, the judge can affirm the decision, reverse the decision, or remand the case for further review. Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834
(R.I. 1993) (citing § 42-35-15(g)). The Court's review is confined "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." JohnstonAmbulatory Surgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (emphasis added) (quoting Barrington Sch. Comm. v. R.I. State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992)).
"`[T]he Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review,' . . . even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency." Id.
(internal citations omitted). Furthermore, "[t]his Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact."Tierney v. Dep't of Human Servs., 793 A.2d 210, 213 (R.I. 2002) (citingTechnic, Inc. v. R.I. Dep't of Labor Training, 669 A.2d 1156, 1158
(R.I. 1996)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Res. Mgmt.Council, 434 A.2d 266, 272 (R.I. 1971). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977).
 REVIEW OF THE DEPARTMENT'S DECISION
The Petitioner argues that the decision of the Hearing Officer should be overturned because it is arbitrary, capricious, and clearly erroneous in view of the reliable, probative, and substantial evidence contained in the entire record. Specifically, the Petitioner argues that the Hearing Officer "overlooked material evidence and misconstrued the testimony before her." (Pet. Mem. at 6.) The Department asserts that the decision of the Hearing Officer should be upheld because it is within the governing legal standards and is supported by specific findings of fact buttressed by the record.
In the introduction to her decision, the Hearing Officer lists the three allegations of the Department against the Petitioner. In her brief, the Petitioner challenges each of these three allegations. Upon review, it is clear that the allegations are not the conclusions of the Hearing Officer, but a recitation of the allegations made by the Department. Accordingly, this Court will address the arguments of the Petitioner that pertain to the actual conclusions of the Hearing Officer, as stated in the Conclusion of the decision.
The Hearing Officer concluded that the Petitioner initially properly evaluated, assessed, developed a treatment plan, and provided treatment to Patient A, but the Petitioner treated the patient for 22 subsequent months "without a formal re-evaluation," except for a regurgitation of the initial evaluation produced only in response to Patient A's employer's request and "not as a result of the [Petitioner's] record keeping practices." (Dep't Decision, Pet.'s Ex. 6 at 5.) The Hearing Officer also concluded that the Petitioner kept notes from each of Patient A's visits; however, the "notes do not establish an assessment or any tests or measures undertaken to determine the cause of the onset of the patient's swallowing and breathing problems, his chest pain and/or the numbness of his upper extremities." (Dep't Decision, Pet.'s Ex. 6 at 5.) Furthermore, the Hearing Officer held that the Petitioner, in treating these additional ailments and symptoms, violated G.L. 1956 §5-40-13 and the Regulations promulgated thereunder because (1) the ailments and symptoms treated were not specifically related to the low back/lumbar referral; and (2) the Petitioner's treatment of the additional ailments and symptoms continued for a period of time well in excess of statutory requirements. As a result of these findings, the Hearing Officer recommended that the Petitioner receive a reprimand.
On appeal, the Petitioner argues that the Hearing Officer was presented with evidence that demonstrated that the Petitioner's care of Patient A complied with all standards of the practice of physical therapy. The Petitioner contends that her notes from each visit of Patient A to her office constituted a running re-evaluation, that her expert deemed them as satisfying professional standards, and that neither Rhode Island law nor Physical Therapy standards provide specific criteria under which these evaluations are to be judged. Additionally, the Petitioner argues that she and her expert provided testimony indicating that the additional symptoms were either related to the initial lower back injury or were parts of the body that she treated in all her patients. Finally, the Petitioner argues that she did not violate § 5-40-13(b) because she did have a referral for Patient A, and that all further treatment arose out of the injury that was the subject of that referral.
In this Court's review of the record, it is clear that the Hearing Officer was presented with testimony from adverse witnesses who offered conflicting testimony regarding all of the Petitioner's appellate arguments. The Petitioner and her expert disagreed with the State's expert about whether the notes taken at each office visit constituted a proper reevaluation. The Petitioner's expert testified that "reevaluations were done on a daily basis . . . on a daily treatment basis." (July 17 Dep't Hr'g at 22.) The State's expert, however, testified that in her opinion, the information and notes taken by the Petitioner at each of Patient A's office visits did not constitute a reevaluation of the patient. (June 3 Dep't Hr'g at 31-32.) Furthermore, the State's expert testified that the only reevaluation the Petitioner completed on Patient A "was identical to the [first one] with the exception of one sentence relative to medications." (June 3 Dep't Hr'g at 29.) The Petitioner contends that neither Rhode Island law nor Physical Therapy standards provide specific criteria under which these evaluations are to be judged.[2] The State's expert, however, testified that it is a standard of practice in the industry, and had been so since she was in school, that a reevaluation should be completed every month, in order "to measure the progress, to identify any additional problems that had come up, and to again determine what the extent of those were through the collection of data." (June 3 Dep't Hr'g at 14.) In the Department's decision, the Hearing Officer noted the conflicting expert opinion testimony regarding the classification of the Petitioner's patient notes in her findings of fact. (Dep't Decision at 3-4.)
Additionally, the Petitioner and her expert disagreed with the State's expert as to whether Patient A's additional symptoms were related to the initial injury for which he sought treatment. The Petitioner's expert testified that the Petitioner only treated body parts that were related to the initial complaint. (July 17 Dep't Hr'g at 36-37.) The State's expert testified that no assessment was ever completed that demonstrated that the additional symptoms suffered by Patient A were related to his lower back injury. (June 3 Dep't Hr'g at 14, 16.) Although the State's expert agreed that it was the Petitioner's practice to treat all parts of the body affected by the referring injury and all symptoms that arise out of that injury, she testified that it was her opinion that Petitioner's practice was "lacking" in that she failed to "rul[e] out other possible reasons for those symptoms to have occurred." (June 3 Dep't Hr'g at 34.) In the findings of fact section of the Department's decision, the Hearing Officer stated that
 "[t]here is no documented evidence existed that the [Petitioner] made an assessment of the etiology of [the additional symptoms], consulted with the treating physicians, or made a referral to any other appropriate physician. Instead, [the Petitioner] testified that she made a determination that those problems were muscleskeletal [sic] in nature and related to the patient's disc disease. She treated those symptoms because she was treating the `whole system'. [sic] She testified that she ruled out cardiac and/or neurological involvement without the intervention of any physician. It would appear from the record that the patient discontinued treatment without resolution of his symptoms when his employer made a determination to discontinue reimbursement for the patient's physical therapy." (Dep't Decision at 4.)
The testimony of the Petitioner and her expert was contradicted by the testimony of the State's expert. When presented with adverse witnesses offering conflicting testimony, a hearing officer must "sift through the testimonial evidence and select which facts carried the greatest weight."Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 207 (R.I. 1993). Moreover, "[c]redibility determinations [are] necessarily implicated in the hearing officer's decision." Id. In the instant case, the Hearing Officer was faced, in essence, with a "battle of the experts," and, after she heard the conflicting testimony, she made a credibility-based determination in reaching her final conclusion. The Petitioner's arguments that the Hearing Officer overlooked material evidence and misconstrued testimony, therefore, are without merit. Upon review of the entire record, this Court finds that the Hearing Officer was mindful of the opinions of both experts and, after viewing all of the testimonial evidence, the Hearing Officer made a credibility determination that is supported by sufficient and competent evidence in the record. This Court will not substitute its judgment for that of the finder of fact concerning witness credibility. Tierny, 793 A.2d at 213. Additionally, this Court will not disturb the decision of the Department when the Hearing Officer makes an informed and record-supported decision after reviewing conflicting expert testimony. See Lowry v. Faraone, 500 A.2d 950,952 (R.I. 1995) (upholding factfinder's decision in spite of conflicting expert testimony if finding not clearly erroneous).
Finally, the Petitioner and her expert disagreed with the State's expert about whether the Petitioner's practice violated the statutory requirements of § 5-40-13(b)(2). Section 5-40-13(b) requires that "[w]henever a patient seeks or receives treatment from a physical therapist without referral . . ., the physical therapist shall . . . (2) Refer the patient . . . within ninety (90) days after the date treatment commenced." Section 5-40-13(b)(2). The State's expert testified that the Petitioner violated the provisions of § 5-40-13(b) because, after Patient A complained of additional symptoms that were not located in his lower back area,
 "there, first of all, should have been an evaluation of that body part to determine whether that particular set of symptoms were related to the initial symptoms or whether there was some other problem going on. There should have been reference to consultation with other practitioners treating those [additional symptoms] if it was not directly related to the initial complaint. And it is okay for a physical therapist to treat without a referral for 90 days for a new problem but after 90 days has to seek consultation with a physician."
(June 3 Dep't Hr'g at 17.) The Petitioner argues that the statute clearly indicates that this provision only applies when a patient seeks initial treatment without a referral. Therefore, Petitioner argues, because Patient A was referred to the Petitioner's care for his lower back injury, this provision does not apply to the Petitioner's treatment of Patient A.
It is well settled that this Court defers to an administrative agency when it interprets a statute whose administration and enforcement has been entrusted to the agency. Pawtucket Power Assoc. Ltd. Partner. v. City ofPawtucket, 622 A.2d 452, 456 (R.I. 1993). Deference is given even when the agency's interpretation of the statute is not the only permissible interpretation that could be applied. Id. at 456-57. This Court is satisfied that the Department's "final decision was grounded in [the Hearing Officer's] interpretation of state law, regulations, and public policy," and is "entitled to great weight." Environmental Scientific, 621 A.2d at 208. Therefore, this Court finds the Department's decision is not affected by error of law.
 CONCLUSION
After review of the entire record, this Court finds the Department's decision is supported by substantial evidence, made upon proper procedure, and within the Department's authority. Moreover, the Department's decision is neither clearly erroneous, in violation of constitutional or statutory provisions, arbitrary or capricious or characterized by abuse of discretion, nor affected by error of law. Furthermore, substantial rights of the Petitioner have not been prejudiced. Accordingly, this Court upholds the Department's decision to issue a reprimand against the Petitioner. Counsel shall submit the appropriate judgment for entry.
[1] For reasons of confidentiality, and to maintain the name given by the Department, the Patient's name has been omitted and replaced with an initial.
[2] In her appeal, the Petitioner states that the State's expert testified that she used the Standards of Practice adopted by the American Physical Therapy Association (APTA) to critique Patient A's care. The Petitioner notes that the Standards of Practice were published in 2001, two years after the Petitioner's treatment of Patient A in 1999. Thus, the Petitioner contends, these standards cannot be used as a basis upon which to judge Patient A's treatment. The State's expert, however, stated that she assessed the Petitioner's care of Patient A using industry standards.